IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| OAK RIDGE TOOL-ENGINEERING, INC , | ) |
| Plaintiffs, | ) ) **CIVIL ACTION #:** 3:13-cv-00992-JFA |
| v. | ) ) ) **JURY TRIAL DEMANDED** |
| SHAW AREVA MOX SERVICES, LLC, | ) ) |
| Defendant. | ) ) ) |

# COMPLAINT

Oak Ridge Tool-Engineering, Inc. ("ORTE"), states its claims against the Defendant as follows:

### Parties, Jurisdiction, and Venue

1. ORTE is a Tennessee corporation which has its principal place of business in Oak Ridge, Tennessee.

2. Upon information and belief, Shaw AREVA MOX Services, LLC ("MOX Services") is a registered South Carolina company, with its principal place of business in Greenville, South Carolina.

3. This Court has subject matter jurisdiction of Plaintiff's claims against the Defendant pursuant to 28 USC § 1332 as the parties maintain diverse domiciles and the amount in dispute is greater than $75,000.00.

4.	Venue is proper for Plaintiff's claims against Defendant pursuant to the parties' agreement that venue shall lie in this Division.  Plaintiff respectfully requests this case be heard before a jury.

## Factual Background

5.	Upon information and belief, MOX Services is a multi-million dollar company, and is the general contractor for a federal construction project known as the Mixed Oxide Fuel Fabrication and Reactor Irradiation Services Facility, in Aiken, South Carolina (the "Project").

6.	ORTE is a small business with its principal place of business located in Oak Ridge, Tennessee, and is a specialized supplier of custom fabricated steel equipment.

7.	In or about November 2009, MOX Services contacted ORTE to discuss a potential business relationship for ORTE to provide materials and supplies for incorporation into the MOX Services' Project.  In response to this contact, Mr. Terry Mullins, President and CEO of ORTE traveled to MOX Services' facilities in South Carolina to meet with Mr. Jay Sawicki, Mr. Donnie Campbell, Mr. Mike Bagale, Ms. Diane Martin and Ms. Janice Olive of MOX Services.

8.	After this meeting, in or about December 2009, Mr. Sawicki traveled to ORTE's facilities to inspect the premises and to ensure that ORTE would "be a good fit" to partner with MOX Services.  Based upon the representations of Mr. Sawicki, ORTE was a "perfect match" to provide the necessary specialized fabricated products.

9.	In or about February 2010, another MOX Services representative visited the ORTE facilities to audit ORTE's Quality Management System ("QMS").  In response to this

visit, the MOX Services representative noted that ORTE's QMS clearly met or exceeded MOX Services' requirements.  ORTE was placed on MOX Services approved suppliers list.

10. In or about spring 2010, ORTE received documents, plans, and specifications (referred to collectively as "Drawings") for three nuclear gloveboxes and subassemblies (the "Gloveboxes") and a process unit (the "Process Unit") MOX Services' desired for ORTE to manufacture.

11. Upon information and belief, MOX Services' engineers provided the design and engineering services for the Drawings for the three Gloveboxes and Process Unit.

12. MOX Services assured ORTE that the Drawings for the Gloveboxes and the Process Unit were complete and construction ready.  MOX Services stated these Drawings had been previously used in France to produce like items.

13. These representations were made by multiple MOX Services' representatives, including Mr. Tom Butler ("Mr. Butler"), the Project Manager.

14. Based upon MOX Services' representation that the design was construction ready, ORTE offered a competitive proposal.  MOX Services further represented the completeness of design by presenting the intended subcontract as a "fixed price – incentive" type.  Based upon ORTE's bid, MOX Services awarded the Contracts to ORTE.

15. On or about August 30, 2010, MOX Services executed Task Order Release No. 001 ("TOR 001") with ORTE for construction and delivery of three Gloveboxes on or before August 24, 2011.  The original contract value for TOR 001 was $3,999,361.

16. On or about August 30, 2010, MOX Services also executed Task Order Release No. 003 ("TOR 003") with ORTE for construction and delivery of a Process Unit on or before

October 3, 2011. The original contract value for TOR 003 was $3,424,110. Collectively, TOR 001 and TOR 003 are herein referred to as "the Contracts."

17. The three Gloveboxes and the Process Unit were to be incorporated into the Project facilities as permanent fixtures of those premises.

18. Pursuant to the Contracts, Section E, paragraph 1.19, MOX Services was contractually obligated to timely provide suitable Drawings to ORTE to begin construction of the Gloveboxes and Process Unit.

19. Pursuant to the Contracts, Section E, paragraph 1.19, if MOX Services failed to provide suitable Drawings or delayed delivery of suitable Drawings, ORTE was entitled to an equitable adjustment to adjust the delivery schedule and/or Contract price according to Section 1.25 of the Contracts.

**Performance of the Contracts**

20. Almost immediately upon execution of the Contracts, MOX Services began issuing revisions to the Drawings due to errors and omissions. Within two weeks of executing the Contracts, MOX Services issued more than 140 changes to the plans and specifications.

21. This pattern continued throughout the life of the Project. By way of example, during 2010 and 2011, MOX Services issued more than 1,000 changes and revisions pertaining to the Gloveboxes and Process Unit.

22. Although not every change directly impacted ORTE's scope of work, many of the Drawing errors significantly slowed ORTE's production. In some cases, the errors or omissions required significant re-design and engineering efforts by ORTE to ensure that the Gloveboxes and Process Unit could be manufactured to the design requirements.

23. ORTE submitted numerous Supplier/Subcontractor Requests to MOX Services for clarification. Pursuant to the Contracts, Section E, paragraph 1.15 of the Contracts, MOX Services was required to respond within a specified time period depending on the nature of the request.

24. Despite multiple attempts by ORTE to gain clarification from MOX Services on critical design and engineering issues, MOX Services delayed responding to several ORTE Supplier/Subcontractor Requests for clarification well beyond the required time period for responses. In some instances, ORTE was forced to wait up to four months before receiving the necessary clarification to proceed.

25. For a number of deficiencies, MOX Services instructed ORTE to prepare and submit a Request for Change Proposal ("RFCP") form in accordance with the Contracts, Section E, paragraph 1.25. In the event MOX Services agreed with the Supplier/Subcontractor Requests for clarification, the RFCP forms were used to adjust the Contract to accommodate the change in price and/or schedule.

26. Once submitted, however, MOX Services delayed or failed to act upon several RFCPs. This imposed additional delay on ORTE in its efforts to accomplish its scope of work.

27. In other instances, MOX Services informed ORTE to continue building the assembly units, despite the fact ORTE had noted multiple errors or omissions and had not yet received necessary clarification from MOX Services.

28. As ORTE corrected and re-engineered the deficient and inadequate design, ORTE was repeatedly re-assured by MOX Services that it would be compensated for its efforts.

29.     On multiple occasions, Mr. Butler informed ORTE that they would be compensated for this additional work.

30.     Mr. Butler made these representations on weekly status calls, and in front of Ms. Benita Johnson ("Ms. Johnson"), the MOX Services employee responsible for ORTE's contract. Also present for many of these communications were Mr. Damon Coon ("Mr. Coon"), the MOX Services Procurement Manager, and Ms. Diane Martin ("Ms. Martin"), Purchasing Agent for MOX Services.

31.     On multiple occasions, Mr. Butler complimented ORTE's Project Management and configuration control processes as being the best of all the subcontractors he was personally responsible for managing.

32.     MOX Services instructed ORTE to focus primarily on MOX Services and avoid contracting with additional customers. These statements were made by several MOX Services representatives, including Mr. Butler. MOX Services represented that additional contracts beyond TOR 001 and TOR 003 would be awarded to ORTE. As a result, ORTE declined additional work from new and established customers based upon the representation that MOX Services would continue to award ORTE with contracts.

**Additional Expenses at MOX Services' Request**

33.     After ORTE was awarded the Contracts, a MOX Services Field Engineer was placed in the ORTE facility.

34.     Once the Field Engineer was located on ORTE's premises, MOX Services instructed ORTE to purchase a computer and other associated equipment and software for the

MOX Services representative. MOX Services represented that ORTE would be reimbursed for this expense.

35. Additionally, ORTE was required to make modifications to its operating systems and communications systems to send and receive messages from MOX Services. These upgrades were done solely at the request of MOX Services.

36. ORTE would not have made these purchases and upgrades but for MOX Services' continuing affirmations that TOR 001 and TOR 003 were only the beginning of a long and lucrative relationship, and the numerous assurances of payment for these items.

### Modifications to the Contracts

37. Due to the numerous deficiencies of the Drawings, TOR 001 was modified four times, with a resulting adjusted subcontract amount of $4,062,908 and with an expected completion date of on or before March 15, 2012. The fourth modification was fully executed on September 6, 2011.

38. Due to the numerous deficiencies of the Drawings, TOR 003 was modified three times, with a resulting adjusted subcontract amount of $3,523,493. The third modification was fully executed on September 6, 2011.

39. These modifications did not capture all of the additional work, materials, design, and management services of ORTE that were requested and required by MOX Services.

40. These modifications did not capture all of the outstanding RFCPs. The combined total of RFCPs submitted prior to the descope actions was over $1.5 million. MOX Services acted upon approximately 11% of these RFPC's, for a value of less than $200,000.

41. Additionally, ORTE sent multiple invoices to MOX Services that MOX Services never paid.

42. In or about July 2011, MOX Services stopped making payments to ORTE altogether, despite receiving multiple invoices from ORTE and without providing notice or any information to ORTE concerning MOX Services' non-payment.

43. Pursuant to the Contracts, Section E, paragraph 2.1, and MOX Services' obligations pursuant to FAR provision 52.232-27, MOX Services was required to make payment to ORTE within seven (7) days after receipt of these invoices if paid by the owner, or within a reasonable time. Failure to make such payment entitles ORTE to recover interest on all outstanding amounts under FAR provision 52.232-27, FAR provision 52.232-17, and as included in the Contracts, Section E, paragraph 1.34.

44. Despite these failures, and without prior notice, on September 19, 2011, MOX Services issued a "Cure Notice" to ORTE based upon an alleged failure to make meaningful process.

45. ORTE responded to the Cure Notice on September 27, 2011, with detailed information supporting the revised delivery schedule, and demonstrating that any delay in progress was a result of multiple MOX Services-directed changes and revisions to the Drawings.

46. Despite ORTE's efforts and its demonstration of its contractual compliance, on or about November 17, 2011, MOX Services notified ORTE that it was unilaterally descoping both TOR 001 and TOR 003 and removing all future work from ORTE. MOX Services' actions violated the Contracts' express terms concerning termination of the Contracts, including but not limited to Section E, paragraphs 1.10 and 1.25.

- 9 -

47. At the time of the descope, ORTE had already researched, located, and presented orders to several downstream vendors for supplies and materials for the benefit of MOX Services. ORTE also prepared its facilities to accommodate MOX Services' requests by way of improvements and by declining additional work.

48. At the time of descope, ORTE had expended vast resources for labor, materials, and project management to accomplish its scope of work for which it had not and has not been compensated.

49. Under the Contracts, ORTE is entitled to an equitable adjustment as required by Section E, paragraphs 1.10, 1.19, 1.25 and is entitled to receive timely payment and interest for services and materials rendered in accordance with the Contracts, Section E, paragraph 2.1 Additionally, ORTE is entitled to "standby time" in accordance with the Contracts, Section E, paragraph 1.29. MOX Services failed to provide any of these remedies.

## COUNT ONE: BREACH OF CONTRACT

50. ORTE incorporates by reference paragraphs 1 through 49 above.

51. MOX Services executed both TOR 001 and TOR 003 with ORTE, in which ORTE agreed to supply three Gloveboxes and a Process Unit.

52. ORTE properly performed its scope of work up to and including the date of MOX Services' unilateral decision to descope the Contracts.

53. MOX Services breached the Contracts by failing to provide construction-ready Drawings for ORTE's scope of work in violation of, but not limited to, Section E, paragraph 1.19 of the Contracts.

54. MOX Services breached multiple provisions in the Contracts, including but not limited to Section E, paragraphs 1.15, 1.16, 1.19, 1.25, and 2.1 by failing to act within a reasonable time for ORTE's requests for clarification or invoices for payment.

55. MOX Services breached multiple provisions in the Contracts, including but not limited to Section E, paragraphs 2.1 and 1.25 by failing to compensate ORTE for the additional work, design, and management services rendered, despite numerous promises to do so.

56. MOX Services breached multiple provisions in the Contracts, including but not limited to Section E, paragraphs 1.25, 2.1 and 1.10.by unilaterally descoping the ORTE Contracts, and by failing to fully compensate ORTE for the costs incurred at the time of MOX Services' unilateral decision to descope the ORTE Contracts.

57. MOX Services breached multiple provisions in the Contracts, including but not limited to Section E, paragraph 2.1 and its obligations under FAR 52.232-27 by failing to timely pay ORTE for proper invoices submitted.  Additionally, MOX Services owes ORTE for all lawful interest incurred on these outstanding amounts from its breach to present pursuant to FAR 52.232-17, and pursuant to the Contracts, Section E, paragraph 1.34.

58. MOX Services breached multiple provisions in the Contracts, including but not limited to Section E, paragraph 1.29 by failing to fully compensate ORTE for ORTE's idle facilities as a result of MOX Services actions during performance of the contract and upon MOX Services' unilateral decision to descope the ORTE Contracts.

59. MOX Services breached its implied covenant of good faith and fair dealing.

60. ORTE fully and properly performed its contractual obligations under the Contracts.

61. All conditions precedent to ORTE's claims for relief have been performed or have been excused.

62. As a result of MOX Services' failure to adhere to its contractual obligations, ORTE suffered direct, indirect, and consequential damages in the aggregate principal amount to be proved at trial, but at least $75,000.00 plus interest.

## COUNT TWO: QUANTUM MERUIT

63. ORTE incorporates by reference paragraphs 1 through 62 above.

64. ORTE provided a benefit by way of its work, materials, supervision, management, and design services.

65. ORTE also rendered additional benefit by way of locating, obtaining and contracting for materials and supplies from downstream vendors for the benefit of MOX Services.

66. MOX Services realized this benefit by receipt of completed products, improved designs, plans, and supplied materials.

67. Retention by MOX Services of these benefits without paying for the value of such benefits would be unjust.

68. All conditions precedent to ORTE's claim for relief have been performed or excused.

69. The unpaid value of additional work, services, and supplies received by MOX Services is in the aggregate principal amount to be proved at trial, but at least $75,000.00 plus interest.

## COUNT THREE: PROMISSORY ESTOPPEL

70.     ORTE incorporates by reference paragraphs 1 through 69 above.

71.     MOX Services made repeated and unambiguous promises to compensate ORTE for its costs incurred for labor, services, and materials rendered.

72.     MOX Services was aware and was able to foresee ORTE's reliance upon these guarantees of payment for additional time, labor, and materials that would be utilized to comply with MOX Services' demands.

73.     As a direct result of MOX Services' failure to adhere to these promises to compensate ORTE for this additional time, labor and materials, ORTE has suffered significant economic injuries in the aggregate principal amount to be proved at trial, but at least $75,000.00 plus interest.

74.     All conditions precedent to ORTE's claim for relief have been performed or excused.

## COUNT FOUR: NEGLIGENT MISREPRESENTATION

75.     ORTE incorporates by reference paragraphs 1 through 74 above.

76.     MOX Services communicated a false representation to ORTE when it assured ORTE that the Drawings were "construction-ready."

77.     MOX Services communicated a false representation to ORTE when Tom Butler and additional MOX Services employees assured ORTE that MOX Services would compensate ORTE its costs incurred for additional time, labor, and materials.

78. MOX Services communicated a false representation to ORTE when it assured Terry Mullins and additional ORTE employees that MOX Services would provide additional contracts to ORTE.

79. MOX Services had a pecuniary interest in making these statements, as it enabled MOX Services to obtain additional labor, services, and supplies from ORTE under a fixed-price incentive contract.

80. MOX Services owed ORTE a duty of care to communicate truthful information.

81. MOX Services breached that duty by failing to exercise due care in its communications.

82. ORTE justifiably relied upon the representations by MOX Services' representatives.

83. ORTE suffered significant harm as a direct and proximate result of false representations made by MOX Services.

### COUNT FIVE: NEGLIGENT DESIGN

84. ORTE incorporates by reference paragraphs 1 through 83 above.

85. MOX Services owed ORTE a duty to provide adequate Drawings for the Gloveboxes and Process Unit.

86. MOX Services failed to provide adequate Drawings for the Gloveboxes and Process Unit.

87. ORTE justifiably relied upon MOX Services' Drawings as they were presented as being "construction-ready."

88. As a direct and proximate result of MOX Services failure to provide adequate Drawings, ORTE suffered significant harm.

## COUNT SIX: COSTS AND ATTORNEY FEES

89. ORTE incorporates by reference paragraphs 1 through 88 above.

90. Pursuant to S.C. Code § 27-1-15, ORTE is entitled to recover all costs and attorneys' fees plus all lawful interest incurred or that will be incurred in enforcing ORTE's right to payment pursuant to the parties agreement.

**WHEREFORE**, Plaintiff respectfully prays for relief and seeks the entry of an Order providing as follows:

A.) As to Count I: entry of an order determining that MOX Services breached its contractual obligations, and judgment in the full amount to be proved at trial, but not less than $75,000.00 plus all lawful interest for ORTE's time, labor, and materials expended.

B.) As to Count II: entry of an order granting ORTE an award of damages in quantum meruit, in the full amount to be proved at trial, but not less than $75,000.00 plus all lawful interest for ORTE's time, labor, and materials expended.

C.) As to Count III: entry of an order determining that MOX Services is estopped from denying its agreement with ORTE, and judgment in the full amount to be proved at trial, but not less than $75,000.00 plus all lawful interest for ORTE's time, labor, and materials expended.

D.) As to Count IV: entry of an order determining that MOX Services made negligent misrepresentations to ORTE that caused direct and proximate harm to ORTE and judgment in an amount to be proved at trial.

E.) As to Count V: entry of an order determining that MOX Services rendered negligent designs that caused direct and proximate harm to ORTE and judgment in an amount to be proved at trial.

F.) As to Count VI: entry of an order determining that MOX Services must pay all costs and attorneys' fees incurred by ORTE, plus all lawful interest.

G.) All other and further relief the Court deems just and proper.

Respectfully submitted this the 12th day of April, 2013.

By: s/Robert G. Rikard
Robert G. Rikard (Fed ID# 6938)
Brian D. Newman (Fed ID# 10537)
Rikard & Protopapas LLC
1329 Blanding Street
Columbia, South Carolina 29201
803.978.6111 telephone
803.978.6112 fax

Jeffrey Belkin (*pro hac admission pending*)
Scott Jarvis (*pro hac admission pending*)
Alston & Bird LLP
One Atlantic Center, 1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone:  404-881-7000

**Attorneys for Oak Ridge Tool-Engineering, Inc.**