IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Oak Ridge Tool-Engineering, Inc, | ) | Civil Action No. 3:13-cv-00992-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Shaw AREVA MOX Services, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**SHAW AREVA MOX SERVICES, LLC'S**
**ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT**

Defendant, Shaw AREVA MOX Services, LLC ("MOX Services"), through its undersigned counsel, for its Answer, Affirmative Defenses, and Counterclaim to Plaintiff Oak Ridge Tool-Engineering, Inc.'s ("ORTE") Complaint filed in the above-entitled matter (the "Complaint"), hereby states as follows:

**FIRST DEFENSE**

The Complaint fails to state a claim or cause of action against MOX Services upon which relief may be granted.

**SECOND DEFENSE**

Subject to the foregoing, and without waiving any of the defenses asserted herein, MOX Services answers the specifically numbered paragraphs of the Complaint as follows:

1.     MOX Services admits that Plaintiff purports to be a Tennessee corporation that has its principal place of business in Oak Ridge, Tennessee.

2.     MOX Services denies the allegations contained in Paragraph 2.

3.      MOX Services admits that Plaintiff purports to claim damages that exceed the minimal jurisdictional amount but denies that Plaintiff has suffered or is entitled to any damages. MOX Services is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3.

4.      MOX Services admits that venue is proper in this Division. The second sentence of Paragraph 4 does not contain factual assertions and therefore requires no response.

5.      MOX Services admits that it is the prime contractor for the mixed oxide fuel facility being built at the Savannah River site outside Aiken, South Carolina. MOX Services denies the remaining allegations in Paragraph 5.

6.      MOX Services is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.

7.      MOX Services is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8.      MOX Services admits that Mr. Sawicki traveled to ORTE's facilities in or about December 2009.  MOX Services is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 8.

9.      MOX Services admits the allegations contained in Paragraph 9.

10.     MOX Services admits the allegations contained in Paragraph 10.

11.     MOX Services admits the allegations contained in Paragraph 11.

12.     MOX Services admits that the referenced design concept set forth in the Drawings had been previously used in France to produce like items.  MOX Services denies the remaining allegations in Paragraph 12.

13.    MOX Services denies that Mr. Tom Butler made the representations referenced in paragraph 12. MOX Services is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13.

14.    MOX Services admits that ORTE offered a competitive proposal for the two referenced Contracts ORTE was awarded.  MOX Services further admits that ORTE was provided the opportunity to provide goods and services under a fixed price incentive contract. MOX Services denies the remaining allegations in Paragraph 14.

15.    MOX Services admits that on or about August 30, 2010, MOX Services executed Task Order Release No. 001 with ORTE for fabrication and delivery of three Gloveboxes on or before August 24, 2011.  MOX Services further admits that the original contract value for TOR 001 was $3,999,361.  MOX Services denies the remaining allegations in Paragraph 15.

16.    MOX Services admits that on or about August 30, 2010, MOX Services also executed Task Order Release No. 003 with ORTE for fabrication and delivery of a Process Unit on or before October 3, 2011.  MOX Services further admits that the original contract value for TOR 003 was $3,424,110.  The third sentence of Paragraph 16 does not contain factual assertions and therefore requires no response. MOX Services denies the remaining allegations in Paragraph 16.

17.    MOX Services admits the allegations contained in Paragraph 17.

18.    MOX Services admits that, pursuant to the Contracts, Section E, paragraph 1.19, if data to be delivered to ORTE is "(1) not suitable for its intended use; and/or (2) not delivered; or (3) not delivered in a timely manner and such untimely delivery impedes Work, then the Subcontractor may request equitable adjustment pursuant to the clause entitled 'Changes' of these Terms and Conditions." MOX Services denies the remaining allegations in Paragraph 18.

3

19.     MOX Services admits that, pursuant to the Contracts, Section E, paragraph 1.19, if data to be delivered to ORTE is "(1) not suitable for its intended use; and/or (2) not delivered; or (3) not delivered in a timely manner and such untimely delivery impedes Work, then the Subcontractor may request equitable adjustment pursuant to the clause entitled 'Changes' of these Terms and Conditions." MOX Services denies the remaining allegations in Paragraph 19.

20.     MOX Services admits that after execution of the Task Order Releases, it issued revisions to the Drawings.  MOX Services denies the remaining allegations in Paragraph 20.

21.     MOX Services admits that after execution of the Contracts, MOX Services issued revisions to the Drawings.  MOX Services denies the remaining allegations in Paragraph 21.

22.     MOX Services admits that not every change impacted ORTE's scope of work. MOX Services denies the remaining allegations contained in Paragraph 22.

23.     MOX Services admits that ORTE submitted numerous Supplier/Subcontractor Requests to MOX Services for clarification. MOX Services admits that, pursuant to the Contracts, Section E, paragraph 1.15, time periods are set depending on the nature of the request to "be used as guidance for setting the MOX Services response required date."  MOX Services denies the remaining allegations in Paragraph 23.

24.     MOX Services denies the allegations contained in Paragraph 24.

25.     MOX Services admits that on occasion it instructed ORTE to prepare and submit modifications in accordance with the Contracts, Section E, paragraph 1.25.   MOX Services further admits that in the event MOX Services agreed with the Supplier/Subcontractor Requests for clarification, the modifications were used to adjust the Contracts to accommodate the change in price and/or schedule.  MOX Services denies the allegations contained in Paragraph 25.

26.     MOX Services denies the allegations contained in Paragraph 26.

27.     MOX Services denies the allegations contained in Paragraph 27.

28.     MOX Services denies the allegations contained in Paragraph 28.

29.     MOX Services admits that on certain occasions, Mr. Butler informed ORTE that it was due additional compensation. MOX Services denies the remaining allegations in Paragraph 29.

30.     MOX Services admits that there were weekly status calls that, in part, addressed requests for additional compensation, and that Ms. Johnson, Mr. Coon, and Ms. Martin were present on occasion.  MOX Services denies the remaining allegations in Paragraph 30.

31.     MOX Services denies the allegations contained in Paragraph 31.

32.     MOX Services is without knowledge or information sufficient to form a belief as to the truth of the allegation that "ORTE declined additional work from new and established customers" in Paragraph 32.  MOX Services denies the remaining allegations in Paragraph 32.

33.     MOX Services admits the allegations contained in Paragraph 33.

34.     MOX Services admits that it instructed ORTE to purchase a computer and other associated equipment and software for the MOX Services representative. MOX Services denies the remaining allegations in Paragraph 34.

35.     MOX Services is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

36.     MOX Services is without knowledge or information sufficient to form a belief as to why or if ORTE would have made the purchases and upgrades to its communication and operating systems without the Task Order Releases 001 and 003.  MOX Services denies the allegations contained in Paragraph 36.

37.    MOX Services admits that TOR 001 was modified six times, with a resulting adjusted subcontract amount of $4,062,908.  MOX Services admits that the fourth modification was executed on September 6, 2011. MOX Services denies the remaining allegations in Paragraph 37.

38.    MOX Services admits that TOR 003 was modified five times, with a resulting adjusted subcontract amount of $3,523,493.  MOX Services admits that the third modification was executed on September 6, 2011. MOX Services denies the remaining allegations in Paragraph 38.

39.    MOX Services admits the allegations contained in Paragraph 39.

40.    MOX Services admits that the modifications did not capture all outstanding RFCPs.  MOX Services denies that ORTE timely submitted the RFCPs prior to the descope action.  MOX Services is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 40.

41.    MOX Services admits that ORTE sent multiple invoices to it.  MOX Services denies that it failed to pay legitimate invoices.

42.    MOX Services admits that in or about July 2011, it stopped making payments to ORTE, despite receiving multiple invoices from ORTE.  MOX Services denies the remaining allegations in Paragraph 42.

43.    MOX Services admits that, pursuant to the Contracts, Section E, paragraph 2.1, MOX Services must "make payments to the Subcontractor for satisfactory performance of the Subcontract Work no later than seven (7) days after receipt of payment by MOX Services from the Owner for the Subcontract Work. If payment, from the Owner, for such Subcontract Work is not received by MOX Services, through no fault of the Subcontractor, MOX Services will make

payment to the Subcontractor within a reasonable time for the Subcontract Work satisfactorily performed." MOX Services denies the remaining allegations in Paragraph 43.

44.     MOX Services admits that it issued a Cure Notice to ORTE.  MOX Services denies the remaining allegations contained in Paragraph 44.

45.     MOX Services admits that ORTE responded to the Cure Notice.  MOX Services denies the remaining allegations contained in Paragraph 45.

46.     MOX Services admits that it notified ORTE that it was descoping both TOR001 and TOR003 and removing all future work from ORTE.  MOX Services denies the remaining allegations contained in Paragraph 46.

47.     MOX Services admits that at the time of the descope, ORTE had already researched, located, and presented orders to several downstream vendors for supplies and materials for the benefit of MOX Services.  MOX Services is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47.

48.     MOX Services denies the allegations contained in Paragraph 48.

49.     MOX Services denies the allegations contained in Paragraph 49.

50.     Paragraph 50 does not contain factual assertions and therefore requires no response.

51.     MOX Services admits the allegations contained in Paragraph 51.

52.     MOX Services denies the allegations contained in Paragraph 52.

53.     MOX Services denies the allegations contained in Paragraph 53.

54.     MOX Services denies the allegations contained in Paragraph 54.

55.     MOX Services denies the allegations contained in Paragraph 55.

56.     MOX Services denies the allegations contained in Paragraph 56.

57.     MOX Services denies the allegations contained in Paragraph 57.

58.     MOX Services denies the allegations contained in Paragraph 58.

59.     To the extent that the allegations contained in paragraph 59 are legal conclusions, they do not require any response. Otherwise, MOX Services denies the allegations contained in paragraph 59 is denied.

60.     To the extent that the allegations contained in paragraph 60 are legal conclusions, they do not require any response. Otherwise, paragraph 60 is denied.

61.     To the extent that the allegations contained in paragraph 61 are legal conclusions, they do not require any response. Otherwise, paragraph 61 is denied.

62.     MOX Services denies the allegations contained in Paragraph 62.

63.     Paragraph 63 does not contain factual assertions and therefore requires no response.

64.     MOX Services denies the allegations contained in Paragraph 64.

65.     MOX Services denies the allegations contained in Paragraph 65.

66.     MOX Services denies the allegations contained in Paragraph 66.

67.     MOX Services denies the allegations contained in Paragraph 67.

68.     MOX Services denies the allegations contained in Paragraph 68.

69.     MOX Services denies the allegations contained in Paragraph 69.

70.     Paragraph 70 does not contain factual assertions and therefore requires no response.

71.     MOX Services denies the allegations contained in Paragraph 71.

72.     MOX Services denies the allegations contained in Paragraph 72.

73.     MOX Services denies the allegations contained in Paragraph 73.

74.    MOX Services denies the allegations contained in Paragraph 74.

75.    Paragraph 75 does not contain factual assertions and therefore requires no response.

76.    MOX Services denies the allegations contained in Paragraph 76.

77.    MOX Services denies the allegations contained in Paragraph 77.

78.    MOX Services denies the allegations contained in Paragraph 78.

79.    MOX Services denies the allegations contained in Paragraph 79.

80.    To the extent that the allegations contained in paragraph 80 are legal conclusions, they do not require any response.  MOX Services admits that it owes a duty to ORTE to communicate truthful information.

81.    MOX Services denies the allegations contained in Paragraph 81.

82.    MOX Services is without knowledge or information sufficient to form a belief as to the truth of the allegations paragraph 82.

83.    MOX Services denies the allegations contained in Paragraph 83.

84.    Paragraph 84 does not contain factual assertions and therefore requires no response.

85.    To the extent that the allegations contained in paragraph 85 are legal conclusions, they do not require any response. MOX Services admits that it agreed to provide drawings that set forth the details necessary to allow ORTE to build the Glove boxes and Process Units.

86.    MOX Services denies the allegations contained in Paragraph 86.

87.    MOX Services is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 87.

88.    MOX Services denies the allegations contained in Paragraph 88.

89.     Paragraph 89 does not contain factual assertions and therefore requires no response.

90.     MOX Services denies the allegations contained in Paragraph 90.

91.     To the extent that a responsive pleading is required to the Prayer, MOX Services denies that Plaintiff is entitled to any of the requested relief.

92.     MOX Services denies each and every allegation in the Complaint which is not expressly addressed herein.

## THIRD DEFENSE

The Complaint is barred by waiver, estoppel, quasi-estoppel, and/or ratification.

## FOURTH DEFENSE

Plaintiff's damages, if any, were caused by its own negligence and fault.

## FIFTH DEFENSE

Plaintiff's damages, if any, if not caused solely by its own negligence and fault, were caused by the negligence and fault of others, not MOX Services, for whom MOX Services is not legally responsible.

## SIXTH DEFENSE

Plaintiff's damages, if any, are completely or in part the product of Plaintiff's failure to mitigate as required by law.

## SEVENTH DEFENSE

Defendant's conduct was not the proximate and/or producing cause of any injury or damage to Plaintiff.

## EIGHTH DEFENSE

The Complaint is barred by the applicable statute of limitations.

10

### NINTH DEFENSE

MOX Services intends to rely on any and all other defenses, the applicability of which may be disclosed through discovery and investigation, and therefore reserves the right to raise additional defenses as they become known.

### PRAYER FOR RELIEF

MOX Services respectfully requests that this Court deny the relief requested in Plaintiff's Complaint, dismiss the action in its entirety, grant MOX Services' its costs of suit and expenses incurred herein, and grant further relief deemed appropriate.

### COUNTERCLAIM

Shaw AREVA MOX Services, LLC ("MOX Services"), for its Counterclaim against Oak Ridge Tool-Engineering, Inc. ("ORTE"), hereby states as follows:

#### Parties, Jurisdiction, and Venue

1.      MOX Services is a limited liability company registered in South Carolina that has its principal place of business in Aiken, South Carolina.

2.      Upon information and belief, ORTE is a Tennessee corporation that has its principal place of business in Oak Ridge, Tennessee.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties maintain diverse domiciles and the amount in controversy is greater than $75,000.00.

4.      Venue is proper for MOX Services' claims against ORTE pursuant to the parties' agreement that venue shall lie in the District Court for the District of South Carolina, Columbia Division.

5.      MOX Services respectfully requests that its claims be heard by a jury.

**Factual Allegations**

6.      MOX Services is the prime contractor for the mixed oxide fuel facility being constructed at the Savannah River site outside Aiken, South Carolina (the "Project").

7.      In early 2010, MOX Services provided documents, plans, and specifications to ORTE for the fabrication and delivery of three nuclear gloveboxes and subassemblies ("Gloveboxes") and a Process Unit.  The Gloveboxes and Process Unit were to be used at the Project.

8.      On or about August 30, 2010, MOX Services and ORTE executed Task Order Release No. 001 ("TOR 001") for fabrication and delivery of three Gloveboxes on or before August 24, 2011.  The original contract value was $3,999,361.  TOR 001 was later modified six times, with a resulting adjusted subcontract amount of $4,062,908.  The fourth modification, the last modification before TOR 001 was descoped, was executed on September 6, 2011.

9.      On or about August 30, 2010, MOX Services and ORTE also executed Task Order Release No. 003 ("TOR 003") for fabrication and delivery of a Process Unit on or before October 3, 2011.  The original contract value was $3,424,110.  TOR 003 was later modified five times, with a resulting adjusted subcontract amount of $3,523,493.  The third modification, the last modification before TOR 003 was descoped, was executed on September 6, 2011.

10.     Throughout late 2010 and 2011, in response to TOR 001 and TOR 003, ORTE placed purchase orders for certain raw and finished materials and equipment necessary for the fabrication of the Gloveboxes and Process Unit.

11.     Shortly after TOR 001 and TOR 003 were first executed, it became apparent that ORTE was unable to perform the work required satisfactorily. By early 2011, it also became apparent that ORTE was unable to create an adequate plan to remediate its unsatisfactory performance.

12.     Beginning in April 2011, MOX Services repeatedly expressed concerns to ORTE during weekly Project Status Meetings.  These concerns included such issues as ORTE's lack of necessary and appropriate equipment and labor resources, including hiring the requisite number of welders, to successfully perform the work scope of TOR 001 and TOR 003.  In addition, MOX Services repeatedly expressed concerns to ORTE regarding ORTE's failure to timely transmit submittals that conformed to the requirements of Section E, paragraphs 1.15, 1.16, and 1.25 of TOR 001 and TOR 003.

13.     From September 2010 through September 2011, ORTE repeatedly missed performance deadlines, which constantly called into question its performance of TOR 001 and TOR 003.  During this time period, ORTE also missed payments to its subcontractors and vendors.

14.     On September 19, 2011, MOX Services issued a Cure Notice to ORTE based on ORTE's failure to make meaningful progress on TOR 001 and TOR 003.  As of September 19, 2011, ORTE had made less than 10% manufacturing progress on each TOR.  The Cure Notice further directed ORTE to protect and preserve all raw materials until MOX Services could make a determination regarding ORTE's continued performance under TOR 001 and TOR 003.

15.     On or about November 17, 2011, in accordance with Section E, paragraphs 1.25 and 1.34, MOX Services notified ORTE that it was descoping both TOR 001 and TOR 003. The descoping was effective immediately upon ORTE's receipt of the notice.

16.     The descoping notice directed ORTE to stop all work and place no further subcontracts or orders for materials, services, or facilities. It further directed ORTE to transfer title and deliver to MOX Services all parts, work-in-process, completed work, supplies, and other material produced or acquired and the plans, drawings, documents, information, and other property that, if the contract had been completed, would be required to be furnished to MOX Services, consistent with Section E, paragraph 1.34 of TOR 001 and TOR 003.

17.     On November 30, 2011, MOX Services issued a letter to ORTE requesting an inventory of the materials and equipment ordered or purchased for the fabrication of the Gloveboxes and Process Unit. By letter dated December 1, 2011, ORTE agreed to comply with MOX Services' inventory of the materials and equipment and agreed to assist with shipping from its facility at MOX Services' direction.

18.     MOX Services inventoried the raw materials purchased by ORTE, which totaled approximately $1,478,000 in value. Those and other materials were removed from ORTE's facility on or about December 6, 2011.

19.     Because of ORTE's inability to fulfill the terms of TOR 001 and TOR 003, MOX Services was forced to identify a new contractor to complete the work on the Gloveboxes and Process Unit. As a result, MOX Services contracted with Petersen, Inc. ("Petersen") to fabricate and deliver the Gloveboxes and Process Unit to be used in the Project.

20.     After the descoping of TOR 001 and TOR 003, MOX Services took possession of those materials and equipment already delivered to ORTE for completion of the Gloveboxes and

14

Process Unit and transferred all materials and equipment to Petersen as Government-furnished property.

21.    At the time of the descoping, ORTE had not taken delivery of all the materials and equipment it had ordered for completion of the Gloveboxes and Process Unit.  As such, some of these materials, including materials from Mayco Industries, Inc. ("Mayco") and TW Metals, Inc. ("TW Metals"), which had been ordered by ORTE but not delivered to or paid for by ORTE were subsequently delivered or transferred to Petersen.  While ORTE originally placed the orders, Petersen or MOX Services took delivery and paid for these materials necessary for fabrication of the Gloveboxes and Process Unit.

22.    In addition, Petersen directly paid Mayco for some of the materials ordered by ORTE, even though those materials were delivered to, and in the possession of, ORTE.  Petersen and MOX Services directed Mayco to deliver the remaining undelivered materials ordered by ORTE to Petersen.

23.    A significant portion of the materials ordered by ORTE and subsequently delivered or transferred to Petersen were not in conformance with TOR 001 and TOR 003's specifications, were damaged, and/or were missing paperwork such that the materials were unusable.  At the time of the descope, ORTE had already invoiced and MOX Services had already paid ORTE for some of these inadequate materials and equipment.

24.    Because of ORTE's failure to perform its contractual obligations adequately, MOX Services has been forced to hire and pay individuals to sort through, retrieve, catalog, and inspect the materials and equipment ordered by ORTE.

25.    Despite using its best efforts to integrate the materials ordered by ORTE, Petersen has been unable to integrate and use all of these materials and equipment.

15

26.      In order to continue work on the Gloveboxes and Process Unit, Petersen has been forced to purchase replacement materials and new equipment and expend resources to purchase, ship, receive, assemble, and integrate these replacement materials and equipment.  To replace those inadequate materials and equipment, Petersen has often been forced to pay an increased price for the same items previously purchased.  Ultimately, these increased costs were charged to and incurred by MOX Services as the prime contractor.

27.      Since the time MOX Services was forced to descope TOR 001 and TOR 003, it has been damaged by the costs it incurred for labor, replacement materials and equipment, and overhead costs associated with, among other things, coordinating, shipping, receiving, and managing the materials and equipment necessary for the continued work on the Gloveboxes and Process Unit.  These damages and costs are a direct consequence of ORTE's failure to perform its obligations under TOR 001 and TOR 003.

### For a First Counterclaim: Breach of Contract

28.      MOX Services incorporates by reference the foregoing paragraphs as if fully set forth herein.

29.      MOX Services and ORTE executed both TOR 001 and TOR 003, in which ORTE agreed to supply three Gloveboxes and a Process Unit.

30.      MOX Services fully and properly performed its contractual obligations under TOR 001 and TOR 003.

31.      ORTE breached multiple provisions of TOR 001 and TOR 003, including but not limited to Section E, paragraphs 1.15, 1.16, 1.18, and 1.25 by impermissibly deviating from the agreed modifications to TOR 001 and TOR 003 and failing to make adequate manufacturing progress.

32.     ORTE breached multiple provisions of TOR 001 and TOR 003, including but not limited to Section E, paragraphs 1.15, 1.16, and 1.25 by failing to timely transmit submittals that conformed to the requirements of paragraphs 1.15, 1.16, and 1.25.

33.     Section E, paragraph 1.34 of TOR 001 and TOR 003 incorporates by reference 48 C.F.R. § 52.249-2 (2004) ("FAR 52.249-2").

34.     ORTE breached multiple provisions of TOR 001 and TOR 003, including but not limited to Section E, paragraph 1.34 and FAR 52.249-2 by failing to protect and preserve the materials, equipment, and other property related to its performance of its obligations under TOR 001 and TOR 003.

35.     ORTE breached multiple provisions of TOR 001 and TOR 003, including but not limited to Section E, paragraph 1.34 and FAR 52.249-2 by failing to terminate all subcontracts related to the fabrication and delivery of the Gloveboxes and Process Unit.

36.     ORTE breached multiple provisions of TOR 001 and TOR 003, including but not limited to Section E, paragraph 1.34 and FAR 52.249-2 by failing to assign to MOX Services all right, title, and interest of ORTE in the materials and equipment purchased for use in the fabrication and delivery of the Gloveboxes and Process Unit.

37.     ORTE breached multiple provisions of TOR 001 and TOR 003, including but not limited to Section E, paragraph 1.34 and FAR 52.249-2 by failing to transfer title and deliver to MOX Services the materials, equipment, supplies, and all other items produced or acquired for performance of TOR 001 and TOR 003.

38.     ORTE breached its implied covenant of good faith and fair dealing.

39.     All conditions precedent to MOX Services' claims for relief have been performed or excused.

40.     As a direct and proximate result of ORTE's failure to fulfill its contractual obligations, MOX Services suffered direct, indirect, and consequential damages in an aggregate amount exceeding $75,000.00 plus interest.

### For a Second Counterclaim: Costs and Attorney's Fees

41.     MOX Services incorporates by reference the foregoing paragraphs as if fully set forth herein.

42.     Pursuant to S.C. Code § 27-1-15, MOX Services is entitled to recover attorney's fees, costs, and all interest incurred and that will be incurred.

### Prayer for Relief

MOX Services respectfully requests that this Court enter an Order providing as follows:

1. Determining that ORTE breached its contractual obligations and for judgment in the full amount to be provided at trial, but exceeding $75,000.00, plus all lawful interest for MOX Services' time, labor, and materials expended;

2. Determining that ORTE must pay all attorney's fees, costs, and all interest incurred and that will be incurred; and

3. Granting all other and further relief that the Court deems appropriate.

Respectfully submitted,

WOMBLE CARLYLE SANDRIDGE & RICE, LLP

By: /s/Kevin A. Hall
    Kevin A. Hall
    Federal Bar No. 5375
    kevin.hall@wcsr.com
    M. Todd Carroll
    Federal Bar No. 9742
    todd.carroll@wcsr.com
    1727 Hampton Street
    Columbia, SC  29201
    (803) 454-6504

Attorneys for Defendant
Shaw AREVA MOX Services, LLC

Columbia, South Carolina
June 14, 2013

D. Ferguson McNiel, III
Gary W. Johnson
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
(713) 758-3882

*Pro Hac Vice Application to be Submitted*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2013, I electronically filed the foregoing document with the Clerk of Court, in accordance with the Federal Rules of Civil Procedure, by using the CM/ECF system, which will send a notice of electronic filing to the following:

Robert G. Rikard
Brian D. Newman
Rikard & Protopapas LLC
1329 Blanding Street
Columbia, South Carolina 29201

Jeffrey Belkin
Scott Jarvis
Alston & Bird LLP
One Atlantic Center, 1201 West Peachtree Street
Atlanta, GA 30309-3424

**Attorneys for Oak Ridge Tool-Engineering, Inc.**

/s/ Kevin A. Hall_____
Kevin A. Hall